No. 25-40137

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

R.J. REYNOLDS TOBACCO COMPANY; Santa Fe Natural Tobacco
Company, Incorporated; ITG Brands L.L.C.; Liggett Group L.L.C.; Neocom,
Incorporated; Rangila Enterprises, Incorporated; Rangila L.L.C.; Sahil
Ismail, Incorporated; Is Like You, Incorporated,

Plaintiffs-Appellees,

v.

FOOD & DRUG ADMINISTRATION; United States Department of Health
and Human Services; Marty Makary, Commissioner, U.S. Food and Drug
Administration; Robert F. Kennedy, Jr., Secretary, U.S. Department of
Health and Human Services,

Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Texas

BRIEF FOR APPELLANTS

*Of Counsel:*

SEAN R. KEVENEY
  *Acting General Counsel*

ROBERT FOSTER
  *Deputy General Counsel*
  *Department of Health & Human Services*
  *Chief Counsel for Food, Research & Drugs*

WENDY S. VICENTE
  *Deputy Chief Counsel, Litigation*

JULIE LOVAS
  *Senior Counsel*
  *Office of the Chief Counsel*
  *Food & Drug Administration*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

JAY R. COMBS
  *Acting United States Attorney*

DANIEL TENNY
LINDSEY POWELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *(202) 616-5372*

## STATEMENT REGARDING ORAL ARGUMENT

This case presents a challenge to a final rule issued by the U.S. Food and Drug Administration implementing provisions of the Family Smoking Prevention and Tobacco Control Act that require updated health warnings on cigarette packages and advertisements. The district court held that plaintiffs demonstrated some likelihood of success on two claims alleging that aspects of the rule are inconsistent with the Act, and it preliminarily enjoined all of the rule's warnings as to all parties to whom they would otherwise apply. Given the importance of these issues, the government respectfully requests oral argument.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION .......................................................3

STATEMENT OF THE ISSUES ...........................................................3

STATEMENT OF THE CASE ...............................................................4

    A.    Statutory Background .............................................................4

    B.    Regulatory Background ...........................................................8

    C.    Prior Proceedings ................................................................13

SUMMARY OF ARGUMENT .............................................................17

STANDARD OF REVIEW ...................................................................19

ARGUMENT ........................................................................................19

I.    The Tobacco Control Act Expressly Authorizes FDA To Change the Cigarette Warnings To Promote Greater Public Understanding of the Risks of Smoking. ..................................................................19

II.    Any Remedy Should Be Limited to the Invalid Aspects of the Rule and to the Parties to These Proceedings........................................31

CONCLUSION ....................................................................................36

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Anibowei v. Morgan*,
  70 F.4th 898 (5th Cir. 2023) ...............................................................19

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ...........................................................................33

*De Beers Consol. Mines v. United States*,
  325 U.S. 212 (1945) ...........................................................................35

*Department of Hous. & Urban Dev. v. Rucker*,
  535 U.S. 125 (2002) ...........................................................................27

*Discount Tobacco City & Lottery, Inc. v. United States*,
  674 F.3d 509 (6th Cir. 2012) ................................................................1

*Gill v. Whitford*,
  585 U.S. 48 (2018) .............................................................................32

*Grupo Mexicano v. Alliance Bond Fund*,
  527 U.S. 308 (1999) ...........................................................................34

*Hernandez v. Reno*,
  91 F.3d 776 (5th Cir. 1996) ................................................................32

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
  638 F.3d 644 (9th Cir. 2011) ..............................................................34

*Mock v. Garland*,
  75 F.4th 563 (5th Cir. 2023) ...............................................................32

*R.J. Reynolds Tobacco Co. v. FDA*,
  145 S. Ct. 592 (2024) .........................................................................14

*R.J. Reynolds Tobacco Co. v. FDA*,
  696 F.3d 1205 (D.C. Cir. 2012), *overruled in part by American Meat Inst. v. USDA*, 760 F.3d 18 (D.C. Cir. 2014) ....................................................8

*R J Reynolds Tobacco Co. v. FDA*,
  96 F.4th 863 (5th Cir. 2024) ......................................................... 13, 22

*Texas v. United States*,
  126 F.4th 392 (5th Cir. 2025) ................................................. 18, 32, 33

*United States v. Gonzales*,
  520 U.S. 1 (1997) ....................................................................................28


**Statutes:**

Administrative Procedure Act,
  5 U.S.C. § 701 *et seq.* .........................................................................3
    5 U.S.C. § 702........................................................................................33
    5 U.S.C. § 705........................................................................................33

Comprehensive Smoking Education Act,
  Pub. L. No. 98-474, § 2, 98 Stat. 2200, 2200 (1984) .........................5

Family Smoking Prevention and Tobacco Control Act,
  Pub. L. No. 111-31, 123 Stat. 1776 (2009) .........................................1
    § 5, 123 Stat. at 1782........................................................... 8, 19
    § 201(b), 123 Stat. at 1845...................................................14
    § 202, 123 Stat. at 1845.........................................................28
    § 202(a), 123 Stat. at 1845...................................................18
    § 202(b), 123 Stat. at 1845-46 ...........................................18

Federal Cigarette Labeling and Advertising Act,
  Pub. L. No. 89-92, § 2(1), 79 Stat. 282, 282 (1965)............................5

15 U.S.C. § 1333(a) ....................................................................................1

15 U.S.C. § 1333(a)(1) ............................................................................ 7, 15, 20

15 U.S.C. § 1333(a)(2) ...............................................................................7

15 U.S.C. § 1333(b)(2) ...............................................................................7

15 U.S.C. § 1333(b)(4) ..............................................................................29

15 U.S.C. § 1333(c) ..................................................................................27

15 U.S.C. § 1333(d)[1] ............................................ 2, 6, 7, 19, 23, 24, 27

15 U.S.C. § 1333(d)[2] .................................... 2, 6, 8, 12, 15, 18, 20, 21, 22, 24, 35

15 U.S.C. § 1333(e)(1) ..............................................................................29

15 U.S.C. § 1333(e)(3) ..............................................................................29

15 U.S.C. § 1334(a) ............................................................................ 18, 28

21 U.S.C. § 387 note ........................................... 1, 4, 5, 6, 8, 19, 21, 30, 31, 32, 35

28 U.S.C. § 1292(a)(1) ................................................................................3

28 U.S.C. § 1331.........................................................................................3

**Rule:**

Fed. R. App. P. 4(a)(1)(B).........................................................................3

**Legislative Materials:**

H.R. Rep. No. 79-1980 (1946) ..................................................................33

H.R. Rep. No. 111-58, pt. 1 (2009) .............................................................6

**Other Authorities:**

76 Fed. Reg. 36,628 (June 22, 2011) ........................................................................8

84 Fed. Reg. 42,754 (Aug. 16, 2019)......................................... 9, 10, 11, 17, 20, 21

85 Fed. Reg. 15,638 (Mar. 18, 2020) ........................................ 1, 4, 5, 9, 12, 31, 35

89 Fed. Reg. 74,831 (Sept. 13, 2024).....................................................................14

## INTRODUCTION

Despite decades of public and private efforts to communicate the serious health consequences of cigarette use, most people do not fully understand these risks, and more than 30 million Americans continue to smoke cigarettes at a cost of more than 480,000 lives per year.  85 Fed. Reg. 15,638, 15,638, 15,652 (Mar. 18, 2020).  Adolescents in particular "underestimate the degree to which smoking can shorten life and the likelihood that they will suffer tobacco-related disease," *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 525 (6th Cir. 2012), and an overwhelming majority of those who become addicted to nicotine begin smoking as minors, 21 U.S.C. § 387 note (Legislative Finding 31).

To promote greater public understanding of these harms, Congress in the Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, 123 Stat. 1776 (2009) (Tobacco Control Act or TCA), enacted extensive updates to the longstanding Surgeon General's warnings that appear on cigarette packages and advertisements and gave the U.S. Food and Drug Administration (FDA) responsibility for implementing these requirements. The TCA set forth nine new warning statements, 15 U.S.C. § 1333(a), and it directed FDA to issue regulations requiring that the warnings include color

images depicting the harms of smoking, *id.* § 1333(d)[1].[1]  The Act also

authorized FDA to "adjust the format, type size, color graphics, and text"

of the warnings if the agency "finds that such a change would promote

greater public understanding of the risks associated with the use of tobacco

products." *Id.* § 1333(d)[2].

Although the original warnings issued by FDA were invalidated by

the D.C. Circuit on First Amendment grounds, FDA developed a new set of

warnings, after extensive study, that this Court held were fully consistent

with the First Amendment.  The warnings are still not on track to take

effect, however, because the district court, on remand, issued a preliminary

injunction on the theory that FDA lacked authority to devise a list of eleven

updated warnings that better reflect the current state of the science in this

area and that the agency found would promote greater public

understanding of the risks of smoking.  Although the district court

identified no substantive problem with FDA's warnings, it mistakenly

perceived technical limitations on FDA's authority.

---

[1] Section 1333 as amended contains two provisions labeled subsection
(d), which are distinguished herein by the addition of bracketed numerals.

The district court erroneously held that FDA was not permitted to update the warning text or include additional warnings in the final rule to account for scientific developments that have identified more health conditions caused by smoking than were documented at the time of the TCA's enactment in 2009.  But the statute specifically contemplates that FDA can adjust the text of the warnings and that such adjustments may include additional warnings.  There is no basis for preventing these updated warnings from taking effect.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331 for this claim under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*  ROA.31.  The district court entered a preliminary injunction on January 13, 2025.  ROA.10599.  The government filed a timely notice of appeal on March 14, 2025.  ROA.10607; *see* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1.  Whether the Tobacco Control Act authorizes FDA to adjust the text and number of warning statements through rulemaking if the agency

finds that such changes will promote greater public understanding of the serious health risks of smoking.

2. Whether the district court abused its discretion by enjoining all of the warnings with respect to plaintiffs "and all others" notwithstanding the general rule that relief should be no broader than necessary to remedy a plaintiff's injuries, and despite the Tobacco Control Act's express statement that any invalid aspects of the warnings may be severed from the remainder and that the rule's invalidity as to one person should not affect its application "to any other person."  21 U.S.C. § 387 note.

## STATEMENT OF THE CASE

### A.     Statutory Background

The Tobacco Control Act responds to decades of evidence regarding the myriad health risks posed by cigarettes and the tobacco industry's marketing of these inherently dangerous products.  "Cigarette smoking remains the leading cause of preventable disease and death in the United States and is responsible for more than 480,000 deaths per year among cigarette smokers and those exposed to secondhand smoke."  85 Fed. Reg. at 15,652 (citation omitted).  "Although cigarette smoking prevalence has generally declined over the past several decades, approximately 34.2

million U.S. adults smoke cigarettes," along with more than a million middle- and high-school students.  *Id.*  Despite laws prohibiting the sale of tobacco products to individuals under the age of 21, the "overwhelming majority of Americans who use tobacco products begin using such products while they are minors and become addicted to the nicotine in those products before reaching the age of 18."  21 U.S.C. § 387 note (Legislative Finding 31).

Since 1966, Congress has required textual warning statements on cigarette packaging so that "the public may be adequately informed" of the dangers of smoking.  Federal Cigarette Labeling and Advertising Act, Pub. L. No. 89-92, § 2(1), 79 Stat. 282, 282 (1965).  Congress has updated the required warnings periodically to make "Americans more aware of any adverse health effects of smoking, to assure the timely and widespread dissemination of research findings and to enable individuals to make informed decisions about smoking."  Comprehensive Smoking Education Act, Pub. L. No. 98-474, § 2, 98 Stat. 2200, 2200 (1984).  Beginning in 1984,

Congress required manufacturers to display four health warning statements referred to as the Surgeon General's warnings.

More than two decades later, Congress found the Surgeon General's warnings "ineffective in providing adequate warnings about the dangers of tobacco products," and it enacted the Tobacco Control Act to "require[] stronger and more specific health warnings" that "incorporate color graphics."  H.R. Rep. No. 111-58, pt. 1, at 4 (2009).  Congress intended the TCA's updated health warnings to "promote greater public understanding of the risks associated with the use of tobacco products."  15 U.S.C. § 1333(d)[2].  Recognizing that FDA has the scientific expertise "to evaluate the impact of labels . . . and promote understanding of the impact of the product on health," 21 U.S.C. § 387 note (Legislative Finding 44), Congress gave FDA broad authority to implement the required warnings and to make changes to those requirements as needed to accomplish the TCA's objectives, 15 U.S.C. § 1333(d)[2].

The TCA expressly contemplated that FDA would further update the warnings.  Congress directed FDA to "issue regulations that require color graphics depicting the negative health consequences of smoking to accompany the label statements."  15 U.S.C. § 1333(d)[1].  The statute

established a set of default statements, which it contemplated would

appear on cigarette packages and advertisements on a rotating basis:

> WARNING: Cigarettes are addictive.
>
> WARNING: Tobacco smoke can harm your children.
>
> WARNING: Cigarettes cause fatal lung disease.
>
> WARNING: Cigarettes cause cancer.
>
> WARNING: Cigarettes cause strokes and heart disease.
>
> WARNING: Smoking during pregnancy can harm your baby.
>
> WARNING: Smoking can kill you.
>
> WARNING: Tobacco smoke causes fatal lung disease in nonsmokers.
>
> WARNING: Quitting smoking now greatly reduces serious risks to your health.

*Id.* § 1333(a)(1).  And the statute provided detailed instructions as to how

the warnings should appear.  *Id.* § 1333(a)(2), (b)(2).

The TCA also expressly gave FDA authority to make changes to the

warnings' format and substance.  FDA "may adjust the type size, text and

format of the label statements specified in subsections (a)(2) and (b)(2)" —

which prescribe the warnings' format — as "appropriate so that both the

graphics and the accompanying label statements are clear, conspicuous,

legible and appear within the specified area."  15 U.S.C. § 1333(d)[1].  And

a separate subsection authorizes FDA to "adjust the format, type size, color

7

graphics, and text of any of the label requirements . . . if the [agency] finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products." *Id.* § 1333(d)[2].

Congress also specified that, "[i]f any provision of this division . . . or of the regulations promulgated under this division . . . , or the application of any such provision to any person or circumstance is held to be invalid, the remainder of this division . . . and such regulations, and the application of such provisions to any other person or circumstance shall not be affected and shall continue to be enforced to the fullest extent possible." TCA § 5, 123 Stat. at 1782 (codified at 21 U.S.C. § 387 note).

### B.    Regulatory Background

In 2011, FDA issued a final rule that required cigarette manufacturers to display, on a rotating basis, the nine TCA warning statements along with images selected by the agency. 76 Fed. Reg. 36,628, 36,628 (June 22, 2011). After the D.C. Circuit found aspects of the rule inconsistent with the First Amendment, *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012), *overruled in part by American Meat Inst. v. USDA*, 760 F.3d 18 (D.C. Cir. 2014) (en banc), FDA undertook a new rulemaking.

In 2014, while FDA was considering the best approach to implementing the updated warnings, the Surgeon General issued a new report on tobacco products that observed an established causal link between cigarette smoking and eleven health conditions "in addition to the more than forty unique health consequences already classified in previous Surgeon General's Reports as being caused by smoking and exposure to secondhand smoke." 84 Fed. Reg. 42,754, 42,756 (Aug. 16, 2019). The conditions newly found to be caused by smoking include diabetes, erectile dysfunction, macular degeneration, and certain additional types of cancers. *See* 85 Fed. Reg. at 15,652. FDA considered these findings as part of its broader review of the scientific literature, and it "evaluated whether revising some or all of the TCA statements to focus on negative health effects that are less-known or less understood by consumers would promote greater public understanding of the risks associated with cigarette smoking." 84 Fed. Reg. at 42,767.

FDA found that "consumers are largely unaware of the negative health consequences of cigarette smoking not mentioned in current warnings as well as more specific information about the negative health effects and their mechanisms." 84 Fed. Reg. at 42,766. The agency

9

identified some of the health conditions more recently linked to smoking as
"an opportunity to educate the public about negative health consequences
of cigarette smoking that are subject to particularly low awareness and
understanding," and it drafted for further study new or revised warning
statements addressing some of those conditions. *Id.*

As part of the rulemaking, FDA held a series of consumer focus
groups to help identify warning statements that would promote greater
understanding of the risks of smoking. The focus groups "assessed initial
consumer responses to 17 revised statements and the nine TCA
statements" and gave FDA "qualitative feedback on consumers'
comprehension of each statement," whether the "health condition was new
information to participants, and other feedback about . . . how to . . .
convey the intended message more clearly." 84 Fed. Reg. at 42,767.
"Generally, participants reported the initial revised statements presented
new information more than the TCA statements," and FDA used that
feedback to select fifteen of the revised statements for further testing. *Id.*

"FDA next conducted a large quantitative consumer research study
to assess which, if any, of the revised warning statements would promote
greater public understanding of the risks associated with cigarette smoking

10

as compared to the TCA statements." 84 Fed. Reg. at 42,767. FDA found that "relatively few participants reported that the content of the TCA statements was new information; more participants reported that the revised statements were new information than did participants who viewed the TCA statements on the same health conditions; and most participants reported that the 'new content' statements"—those that did not have a TCA counterpart—"were new information." *Id.* at 42,768.

The results for ten of the fifteen revised or new statements showed a statistically significant greater likelihood of promoting consumer understanding compared to the TCA statements, and FDA selected those ten statements for further study, along with five TCA statements that lacked a counterpart among the revised statements. 84 Fed. Reg. at 42,768-69. FDA then designed and tested photorealistic images to accompany those statements, and it conducted a final consumer research study that measured the effectiveness of the warnings relative to the longstanding Surgeon General's warnings, *id.* at 42,770, before selecting thirteen text-and-image warnings for inclusion in the proposed rule, *id.* at 42,772.

FDA ultimately chose eleven of those warnings for the final rule issued in March 2020 based on its finding that "the new required cigarette

11

health warnings will advance the Government's interest in promoting greater public understanding of the negative health consequences of cigarette smoking." 85 Fed. Reg. at 15,640. Of the final eleven warnings, two use textual statements provided in the TCA, while five use revised text and four use new text, consistent with 15 U.S.C. § 1333(d)[2]. *See* 85 Fed. Reg. at 15,641-42. The required warnings are depicted below:

Required
Warnings:
2020 Final Rule















### C.    Prior Proceedings

1.  Plaintiffs are four cigarette manufacturers and five cigarette retailers who filed suit alleging that the 2020 rule was arbitrary and capricious, contrary to statute, and inconsistent with the First Amendment. The district court granted summary judgment for plaintiffs on First Amendment grounds, and a unanimous panel of this Court reversed. *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863 (5th Cir. 2024).  The Court concluded that "the factual content of the textual warnings is undisputed" and that "each of the images provides a straightforward, science-based, objectively truthful depiction of the accompanying text." *Id.* at 879-80 (quotation marks omitted).  The Court further held that the warnings are amply justified by the government's legitimate interest in "[i]ncreasing public understanding of the risks of smoking, particularly given the long history of deception concerning consumer health risks in the cigarette industry." *Id.* at 883-84 (quotation marks omitted).  And the Court remanded for the district court to address plaintiffs' remaining challenges in the first instance. *Id.* at 888.

After the Court denied plaintiffs' petition for rehearing en banc without calling for a response, *R J Reynolds Tobacco Co. v. FDA*, No. 23-

40076, (5th Cir. May 21, 2024), ECF No. 162-1, the mandate issued, and the rule took effect on May 29, 2024.  Plaintiffs filed a petition for certiorari, and, in keeping with the fifteen-month compliance period contemplated by TCA § 201(b), 123 Stat. at 1845, FDA represented that it would not enforce the rule as to plaintiffs for fifteen months after the Supreme Court denied the petition or resolved the case on the merits.  *See* ROA.10313.  The agency also issued guidance in September 2024 stating that it generally would not enforce the rule for fifteen months in order to give regulated parties time to comply.  89 Fed. Reg. 74,831, 74,832 (Sept. 13, 2024).  On November 25, 2024, the Supreme Court denied the petition for certiorari.  *R.J. Reynolds Tobacco Co. v. FDA*, 145 S. Ct. 592 (2024).

2.  Despite having asked the district court to delay its consideration of the remaining issues while the petition for certiorari was pending, plaintiffs subsequently alleged a likelihood of irreparable harm absent immediate action by the district court and asked the court to postpone the rule's effective date during the pendency of the remand proceedings.  The government opposed plaintiffs' request and moved for summary judgment on the remaining claims—which had also been fully briefed during the initial summary-judgment proceedings.

14

On January 13, 2025, the district court granted plaintiffs' motion and ordered the rule's effective date "postponed for plaintiffs and all others whom it governs until the entry of final judgment in this case." ROA.10599.  The district court rejected the majority of plaintiffs' arguments, ROA.10592-10598, but it concluded that plaintiffs were likely to succeed on their claim that FDA lacked authority to increase the number of warnings from nine to eleven.  ROA.10586.  The court observed that "[t]he Act declares that it 'shall be unlawful' to distribute cigarette packaging that does not carry 'one of the following labels' and then lists nine, specific statements."  ROA.10586 (quoting 15 U.S.C. § 1333(a)(1)).  And it concluded that the TCA's grant of authority to FDA to "'adjust the format, type size, color graphics and text of any of the label requirements'" likely "is limited to acting on one or more things in a statutory list of nine" and does not authorize FDA to increase the number of warnings.  ROA.10587 (emphases omitted) (quoting 15 U.S.C. § 1333(d)[2]).

The district court also concluded that plaintiffs have "some, substantial likelihood of success" on their claim that FDA lacked authority to substantively alter the text of the TCA's warning statements. ROA.10590.  The court found "some support" for plaintiffs' view that the

15

agency's authority under § 1333(d)[2] to "adjust the . . . text" of the

warnings to promote greater understanding of the risks of smoking

extends no further than the agency's authority under § 1333(d)[1] to "adjust

the . . . text" for clarity and legibility. ROA.10591 (alterations in original)

(quotation marks omitted). "Given the strong tilt of equitable factors in

plaintiffs' favor," ROA.10591— including the likelihood that plaintiffs will

"incur costs that cannot be reimbursed" and the limited effect of a

postponement on the public interest given that the rule's "only goal is

achieving more information in the abstract, not achieving a real-world

change in behavior," ROA.10571—the court held that "interim relief on this

claim is also warranted" despite its conclusion that "defendants also have a

substantial likelihood of ultimate success," ROA.10590-10591.

In light of these determinations, the district court postponed the

effective date of the rule "as to all whom the rule would otherwise govern

pursuant to 5 U.S.C. § 705," ROA.10589, and it ordered that "defendants

are preliminarily enjoined from enforcing against plaintiffs the cited rule

and the associated statutory provisions," ROA.10599.

## SUMMARY OF ARGUMENT

**I.** The Tobacco Control Act gave FDA substantial authority to implement updated cigarette health warnings and to adjust the warnings to promote greater public understanding of the serious risks of smoking. The TCA set forth nine default warning statements in 2009, but scientists have continued to identify additional health conditions caused by smoking, and FDA found that these newly recognized conditions present "an opportunity to educate the public about negative health consequences of cigarette smoking that are subject to particularly low awareness and understanding." 84 Fed. Reg. at 42,766. After a series of consumer research studies showed that certain new or revised warning statements would promote greater public understanding than the default statements in the TCA, FDA exercised its authority to make changes to those statements and issued a final rule requiring eleven text-and-image warnings.

Contrary to plaintiffs' contention, Congress plainly authorized FDA to make changes to both the text and number of the TCA warnings, and FDA properly exercised that authority in the final rule. In a section of the TCA titled "change in required statements," Congress expressly provided

that the agency, through rulemaking, "may adjust the format, type size, color graphics, and text of any of the label requirements" if the agency "finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products."  TCA § 202(b), 123 Stat. at 1845-46 (capitalization omitted) (codified at 15 U.S.C. § 1333(d)[2]). The only other provision that appears in that section of the TCA also references the agency's authority to "require[] additional or different statements" on cigarette packages.  TCA § 202(a), 123 Stat. at 1845 (codified at 15 U.S.C. § 1334(a)).  FDA exercised this authority, and the record amply supports its conclusion that the eleven warnings required by the final rule will promote greater public understanding of the risks of smoking. Plaintiffs' arguments for a narrower view of FDA's authority lack merit.

**II.**  Even if plaintiffs were likely to succeed on the merits, any relief should be limited to the parties to these proceedings, and to any portions of the rule that are held to be invalid.  The universal relief ordered by the district court is overbroad as a general matter, *see Texas v. United States*, 126 F.4th 392, 420 (5th Cir. 2025), and it is particularly inappropriate here in light of the TCA's express statement that, "[i]f any provision . . . of the regulations promulgated under this division . . . , or the application of any

such provision to any person or circumstance is held to be invalid, the

remainder of . . . such regulations, and the application of such provisions to

any other person or circumstance shall not be affected and shall continue to

be enforced to the fullest extent possible." TCA § 5, 123 Stat. at 1782

(codified at 21 U.S.C. § 387 note). The pendency of similar litigation in

another district underscores the problems here with universal relief.

## STANDARD OF REVIEW

This Court reviews the grant of a preliminary injunction for abuse of

discretion, reviewing any factual findings for clear error and any legal

conclusions de novo. *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023).

## ARGUMENT

**I.    The Tobacco Control Act Expressly Authorizes FDA To Change the Cigarette Warnings To Promote Greater Public Understanding of the Risks of Smoking.**

1. The Tobacco Control Act directed FDA to issue a rule

implementing the cigarette warning requirements that would replace the

decades-old Surgeon General's warnings. Congress contemplated that the

new warnings would comprise both a textual and a graphic component,

and it directed FDA to develop the graphic component through

rulemaking. 15 U.S.C. § 1333(d)[1]. For the warning text, Congress set out

nine default statements, *id.* § 1333(a)(1), but it expressly authorized FDA to "adjust the . . . text . . . if the [agency] finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products." *Id.* § 1333(d)[2].

In the rulemaking at issue, which culminated in March 2020, FDA exercised that statutory authority to conclude that a change from the default label statements that Congress set forth in 2009 was warranted. Based on an extensive rulemaking record that included some of the largest consumer research studies ever conducted on cigarette warnings, FDA determined that a somewhat different set of label statements "would promote greater public understanding of the risks associated with the use of tobacco products," 15 U.S.C. § 1333(d)[2].  As FDA explained, while the magnitude of the harms caused by smoking are well-documented, scientists continue to identify additional health conditions that are causally linked to smoking, and some of the health conditions more recently linked to smoking present "an opportunity to educate the public about negative health consequences of cigarette smoking that are subject to particularly low awareness and understanding."  84 Fed. Reg. at 42,766.

In particular, the 2014 Surgeon General's Report identified eleven health conditions that have been established to have a causal link to cigarette smoking "in addition to the more than forty unique health consequences already classified in previous Surgeon General's Reports as being caused by smoking and exposure to secondhand smoke." 84 Fed. Reg. at 42,756. FDA found that "consumers are largely unaware of the negative health consequences of cigarette smoking not mentioned in current warnings as well as more specific information about the negative health effects and their mechanisms." *Id.* at 42,766. And it identified some of the health conditions more recently linked to smoking as "an opportunity to educate the public about negative health consequences of cigarette smoking that are subject to particularly low awareness and understanding." *Id.* Extensive testing indicated that the eleven warnings included in the final rule would promote greater public understanding of these risks. Congress recognized FDA's expertise in evaluating such questions, *see* 21 U.S.C. § 387 note (Legislative Finding 44), and expressly authorized the agency to "adjust the . . . text . . . if the [agency] finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products," 15 U.S.C. § 1333(d)[2].

21

2.  The district court initially concluded that the rule's updated warnings violated the First Amendment, but this Court reversed.  As this Court explained, these health warnings are amply justified by the government's interest in "[i]ncreasing public understanding of the risks of smoking, particularly given the long history of deception concerning consumer health risks in the cigarette industry."  *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 883 (5th Cir. 2024) (quotation marks omitted).  Each textual warning provides "factual content" that is "undisputed," and "each of the images provides a straightforward, science-based, objectively truthful depiction of the accompanying text."  *Id.* at 879-80 (quotation marks omitted).

On remand, the district court concluded that several of plaintiffs' challenges were foreclosed by this Court's reasoning.  ROA.10592-10594.  And it held that the substantive challenges not addressed by this Court likely failed on the merits because the agency's actions were reasonable.  ROA.10594-10596.  Of particular importance to the remaining issues, the district court did not disturb FDA's conclusion that the changes to the warning text "would promote greater public understanding of the risks associated with the use of tobacco products."  15 U.S.C. § 1333(d)[2].

3. The district court nonetheless held that FDA could not implement the updated warnings because FDA had likely exceeded its authority to alter the warning text. That reasoning founders on the statute's plain language. As noted above, Congress expressly conferred authority on FDA to alter the warnings. It did so in two separate provisions that together illustrate the scope of this authority.

Section 1333(d)[1] directs FDA to "issue regulations that require color graphics depicting the negative health consequences of smoking to accompany the label statements specified in subsection (a)(1)." 15 U.S.C. § 1333(d)[1]. As part of that authority, § 1333(d)[1] allows the agency to "adjust the type size, text and format of the label statements specified in subsections (a)(2) and (b)(2)" as "appropriate so that both the graphics and the accompanying label statements are clear, conspicuous, legible and appear within the specified area." *Id.* By its terms, this provision confers authority to change the formatting requirements in (a)(2) (applicable to packages) and (b)(2) (applicable to advertisements) to accommodate the images required by the rulemaking. It does not address FDA's authority to change the warning statements, and the agency accordingly did not rely on that authority as relevant here.

23

Unlike § 1333(d)[1], the authority provided by § 1333(d)[2] is not limited to formatting and other changes that ensure the label contents are "clear, conspicuous, legible and appear within the specified area." 15 U.S.C. § 1333(d)[1]. Rather, it encompasses "changes" that the agency concludes "would promote greater public understanding of the risks associated with the use of tobacco products." *Id.* § 1333(d)[2]. That Congress twice referred to the authority provided by (d)[2] as the authority to "change" the required statements—a term not used in connection with (d)[1]—further underscores that provision's breadth. *See id.* (using the term "change" in both the title and text of that subsection). Accordingly, although both (d)[1] and (d)[2] provide that FDA "may adjust the . . . text" of the warnings in certain circumstances, the context of that phrase differs significantly in the two provisions, and § 1333(d)[2] plainly grants the agency broader authority.

The district court stated that "plaintiffs have some, substantial likelihood of success" on their claim that FDA lacks authority to change "the substantive content of the warnings," but it further stated that "defendants also have a substantial likelihood of ultimate success after further analysis." ROA.10590. Although the court was equivocal in this

respect, its analysis supports the government's reading of the text.
Addressing plaintiffs' argument that FDA's authority to "adjust the . . .
text" under (d)[2] is no greater than its authority under (d)[1], the court
acknowledged that (d)[2] (but not (d)[1]) "uses 'change' to describe what it
means to 'adjust' the text, undercutting the idea that 'adjust'" in (d)[2]
"means something less than any change."  ROA.10590 (alteration in
original).  And the court observed that "plaintiffs have not identified a
plausible reason why Congress would have used the phrase 'adjust the
text' in that limited way in subsection (d)[2] while requiring that the
adjustment promote greater public understanding of health risks."
ROA.10591.  The court did not disturb the agency's factual finding that the
changes promote greater public understanding of the health risks, which
underpins its exercise of statutory authority.  And the court provided no
countervailing explanation as to why, despite that analysis, plaintiffs have
"some, substantial likelihood of success on this claim."  ROA.10590.

    4.  The district court's reasoning with regard to the number of
warnings likewise cannot be reconciled with this analysis of § 1333(d)[2],
and it in any event fails on its own terms.  The court stated that because
§ 1333(a)(1) makes it "'unlawful' to distribute cigarette packaging that does

not carry 'one of the following labels' and then lists nine, specific statements," it would be unlawful for manufacturers to include any other statement even if prescribed by FDA.  ROA.10586 ("If the agency had authority to add two more statements to the Act's list of nine rotating statements, then 18% (2/11) of the statements required by rule would be unlawful under § 1333(a)(1).  Likewise with § 1333(b)(1)'s declaration that it is unlawful to advertise cigarettes without 'one of the labels specified in subsection (a).'").  But the statute's requirement to carry "one of the" labels must be understood in context of the statute's express grant of authority to FDA to "adjust" those very label statements.  The suggestion that the Act's reference to "one of the" labels necessarily precludes any variation cannot be reconciled with FDA's express authority to adjust those labels.  Even plaintiffs do not dispute that FDA has some power to change the label statements, and the TCA requires packages to carry the label requirements as implemented by FDA.

Parsing § 1333(d)[2]'s authorization for FDA to "adjust the format, type size, color graphics, and text of any of the label requirements," the district court reasoned that "[t]he word 'the' before 'text' is a definite article referring to the singular text of a label requirement" and "does not convey

an authority to add alternative texts to 'the label requirement' at issue."
ROA.10587. This argument wrongly assumes that Congress treated each
textual label statement identified in § 1333(a)(1) as an individual "label
requirement" rather than referring to "label requirements" more generally.
It would make little sense to refer to the agency's authority to change "the
format, type size, [or] color graphics" of the textual statements set out in
subsection (a)(1), because subsection (a)(1) does not provide for color
graphics or prescribe the warnings' format or type size. And when
Congress meant to refer specifically to "[t]he label statements specified in
subsection (a)(1)," it generally used that more specific phrasing. 15 U.S.C.
§ 1333(c), (d)[1].

Accordingly, FDA's authority to "adjust" features "of any of the label
requirements" cannot reasonably be understood to authorize changes only
to a definite list of nine label statements. Rather, it refers more generally to
a set of requirements imposed on labeling and makes clear that FDA has
authority to alter them. Congress's use of the word "any" underscores the
breadth of its delegation of authority. *See Department of Hous. & Urban Dev.
v. Rucker*, 535 U.S. 125, 131 (2002) (reiterating that "the word 'any' has an

expansive meaning, that is, 'one or some indiscriminately of whatever kind'" (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)).

The district court's contrary view also cannot be reconciled with the TCA's reference to FDA's authority to require "additional or different statements" on cigarette packages, 15 U.S.C. § 1334(a).  In the only two provisions of a section of the TCA titled "authority to revise cigarette warning label statements," TCA § 202, 123 Stat. at 1845 (capitalization omitted), Congress both added § 1333(d)[2] and amended the Federal Cigarette Labeling and Advertising Act's preemption provision to prohibit states from requiring any statement on a cigarette package other than those set out in the TCA, "[e]xcept to the extent the Secretary requires additional or different statements."  15 U.S.C. § 1334(a).  The district court did not attempt to explain why Congress would refer to FDA's authority to require "additional . . . statements," in the same provision that gave FDA authority to alter the text of the label requirements, if it actually did not mean to allow FDA to add additional statements.  The court properly did not adopt plaintiffs' argument that the provision is addressed not to the label statements to which it expressly refers but instead only to tar, nicotine, and other smoke-constituent disclosures required by a different section,

28

§ 1333(c), and which the statute refers to as "disclosures," *see, e.g.*, *id.* § 1333(b)(4), (e)(1), (3), rather than "statements."

Even apart from its failure to grapple with statutory text that confirms Congress's grant of authority to FDA to require additional statements, the district court's explanation of why Congress might have wished to limit the permissible number of label statements is implausible. The court stated that "manufacturers face a material, additional cost in incorporating and printing each additional required warning" because "[d]esigners must perform more work," "[m]ore printing cylinders must be engraved," and "[a] rotation plan must include more steps."  ROA.10588.

There is no hint of these concerns on the face of the relevant provision, which instead refers to the need to inform the public of the health risks of smoking.  Nor is there any indication in the TCA's forty-nine statutory findings that Congress cared about the cost to manufacturers of engraving a few more printing cylinders, despite ample evidence that Congress was concerned with other costs.  Congress emphasized the tens of billions of dollars in health care costs associated with smoking-related disease, and it noted that in a single year "cigarette manufacturers spent more than $13,000,000,000 to attract new users, retain current users,

increase current consumption, and generate favorable long-term attitudes toward smoking and tobacco use."  21 U.S.C. § 387 note (Legislative Findings 14, 16).

Congress also recognized FDA's substantial scientific expertise "to evaluate the impact of labels . . . and promote understanding of the impact of the product on health."  21 U.S.C. § 387 note (Legislative Finding 44). The agency's scientific expertise makes it well positioned to identify and respond to changing scientific understandings of the health risks of smoking—as well as changes in consumer understanding—and § 1333(d)[2] expressly gives FDA authority to further update the warnings in light of its expert scientific determinations.  Consistent with this broad grant of authority, no other provision of the TCA precludes FDA from increasing or decreasing the number of required warnings in furtherance of that aim.  Nor does the Act otherwise suggest that there is something special about having precisely nine warnings.  In the face of this express delegation of broad authority to change the default warnings, and in the absence of a specific limitation of the type plaintiffs seek, the Court should decline to find that plaintiffs have carried their burden of demonstrating a

likelihood of success on their arguments that FDA lacked authority to

change the wording or number of warning statements.[2]

## II.    Any Remedy Should Be Limited to the Invalid Aspects of the Rule and to the Parties to These Proceedings.

Both the Tobacco Control Act and the final rule require that, if some

part of the rule is found to be invalid, any remedy must be limited to that

aspect of the rule and to the parties thereby injured.  21 U.S.C. § 387 note;

*see* 85 Fed. Reg. at 15,695.  The relief entered by the district court is

insufficiently tailored in two important respects.

1.  First, the district court erred in entering relief that runs to the

benefit of non-parties.  ROA.10599.  The text of the TCA makes clear that

Congress did not intend a universal remedy where it specifies that, if "the

application of any . . . provision [of the TCA] to any person or circumstance

is held to be invalid, the remainder of [the TCA] . . . and the application of

such provisions to any other person or circumstance shall not be affected

---

[2] This Court should rule on both aspects of this question because the district court's decision rests on both grounds.  *See* ROA.10586 (concluding that plaintiffs were likely to succeed on their claim that FDA lacked authority to increase the number of warnings from nine to eleven), and ROA.10590 (concluding that plaintiffs have "some, substantial likelihood of success" on their claim that FDA lacked authority to substantively alter the text of the TCA's warning statements and granting relief on that basis).

and shall continue to be enforced to the fullest extent possible." 21 U.S.C.

§ 387 note. Thus, regardless of whether nationwide relief is available

under the APA as a general matter, the Court should follow the more

specific, and more recent, statutory language in the TCA, which expressly

precludes relief that runs to non-parties.

This approach in any event comports with the rule, recently

reaffirmed by this Court, that "[r]emedies must be 'tailored to redress' a

plaintiff's injury, . . . and equitable remedies such as injunctions should not

provide more relief than 'necessary to give the prevailing party the relief to

which [it] is entitled." *Texas v. United States*, 126 F.4th 392, 420 (5th Cir.

2025) (second alteration in original) (first quoting *Gill v. Whitford*, 585 U.S.

48, 73 (2018), and then quoting *Hernandez v. Reno*, 91 F.3d 776, 781 & n.16

(5th Cir. 1996)) (tailoring the remedy to the asserted injury and

preliminarily enjoining a final rule only as to one State rather than ordering

nationwide relief). "Though universal relief may be an appropriate

remedy in some circumstances, 'nationwide injunctions are not required or

even the norm.'" *Id.* at 420-21 (quoting *Mock v. Garland*, 75 F.4th 563, 587

(5th Cir. 2023)). "Instead, 'injunctive relief should be no more burdensome

to the defendant than necessary to provide complete relief to the

plaintiffs.'"  *Id.* at 421 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Those principles are buttressed here by the APA's text and history. Section 705—the basis on which plaintiffs sought relief—explicitly incorporates limitations on non-party relief by permitting a court to stay agency action only "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705.  Its legislative history likewise makes clear that Congress intended § 705 relief to be "equitable" and used only "to prevent irreparable injury," and that "[s]uch relief would normally, if not always, be limited to the parties complainant."  H.R. Rep. No. 79-1980, at 43 (1946). The APA explicitly reinforces that its provisions do not affect "the power or duty of the court" to "deny relief on" any "equitable ground."  5 U.S.C. § 702.  Courts must therefore decline to enter nationwide relief, however styled, where other remedies would fully redress plaintiffs' injuries.  *See Texas*, 126 F.4th at 421 ("narrowing the scope of [an] injunction" against a final rule to a single plaintiff after finding that the injury alleged was fully redressable by that more limited remedy).

Nationwide relief is particularly unwarranted in these circumstances given that another district court is currently considering a similar challenge

to the rule.  *See Philip Morris USA Inc. v. FDA*, No. 24-143 (S.D. Ga. filed

Dec. 13, 2024).  Universal relief could render any order by the Southern

District of Georgia meaningless, as a practical matter, and it might limit the

opportunity for other appellate courts to test substantially similar claims.

*See Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir.

2011) (noting that nationwide relief may be "inappropriate" where it

prevents "important or difficult questions of law" from being addressed

"in multiple decisions by the various courts of appeals").  The preliminary

nature of the relief at issue here does not alter this analysis, as preliminary

relief may not exceed the scope of the remedy the court may grant at the

conclusion of the suit.  *See Grupo Mexicano v. Alliance Bond Fund*, 527 U.S.

308, 326-27 (1999).

    2.  The court's analysis also improperly failed to consider the

warnings individually, as required by the applicable severability

provisions.  Even if it were true that FDA lacked authority to increase the

number of warnings and that its authority to "adjust" the text pursuant to

§ 1333(d)[2] encompassed only smaller changes, two of the warnings in the

final rule are plainly consistent with that authority because they use the

TCA's default text, and another five of the warnings make only small

34

changes to that text to provide additional information about health conditions in the default statements. *See* ROA.10582-10583. The district court's analysis did not suggest how those smaller revisions fall outside FDA's express authority to make at least some adjustments to the warnings' text. 15 U.S.C. § 1333(d)[2].

The severability provisions of the TCA and the final rule require consideration of these points and direct that any valid aspects of the rule be given effect. *See* 21 U.S.C. § 387 note; 85 Fed. Reg. at 15,695. The lack of any showing that plaintiffs are likely to succeed on the merits of their claims with respect to the seven warning statements that are identical or substantially similar to the TCA warning statements makes injunctive relief improper with respect to those warnings. *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (emphasizing that courts may not "restrain action or conduct" that is not "violative of" the law, even on a preliminary basis).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

*Of Counsel:*

SEAN R. KEVENEY
  *Acting General Counsel*

ROBERT FOSTER
  *Deputy General Counsel*
  *Department of Health & Human Services*
  *Chief Counsel for Food, Research & Drugs*

WENDY S. VICENTE
  *Deputy Chief Counsel, Litigation*

JULIE LOVAS
  *Senior Counsel*
  *Office of the Chief Counsel*
  *Food & Drug Administration*

JUNE 2025

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

JAY R. COMBS
  *Acting United States Attorney*

DANIEL TENNY
  *s/ Lindsey Powell*

LINDSEY POWELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *(202) 616-5372*
  *lindsey.e.powell@usdoj.gov*

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Lindsey Powell*

LINDSEY POWELL

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,926 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*s/ Lindsey Powell*

LINDSEY POWELL

**ADDENDUM**

# TABLE OF CONTENTS

15 U.S.C. § 1333 (excerpt) ..................................................................... A1

15 U.S.C. § 1334 ................................................................................... A6

21 U.S.C. § 387 note (excerpt) ............................................................. A7

15 U.S.C. § 1333 – Labeling (excerpt)

(a) Label requirements

(1) In general

It shall be unlawful for any person to manufacture, package, sell, offer to sell, distribute, or import for sale or distribution within the United States any cigarettes the package of which fails to bear, in accordance with the requirements of this section, one of the following labels:

WARNING: Cigarettes are addictive.

WARNING: Tobacco smoke can harm your children.

WARNING: Cigarettes cause fatal lung disease.

WARNING: Cigarettes cause cancer.

WARNING: Cigarettes cause strokes and heart disease.

WARNING: Smoking during pregnancy can harm your baby.

WARNING: Smoking can kill you.

WARNING: Tobacco smoke causes fatal lung disease in nonsmokers.

WARNING: Quitting smoking now greatly reduces serious risks to your health.

(2) Placement; typography; etc.

Each label statement required by paragraph (1) shall be located in the upper portion of the front and rear panels of the package, directly on the package underneath the cellophane or other clear wrapping. Each label statement shall comprise the top 50 percent of the front and rear panels of the package. The word "WARNING" shall appear in capital letters and all text shall be in conspicuous and legible 17-point type, unless the text of the label statement would occupy more than 70 percent of such area, in which case the text may be in a smaller conspicuous and legible type size, provided that at least 60 percent of such area is occupied by required text. The text shall be black on a white background, or white on a black background, in a manner that contrasts, by typography, layout, or color, with all other printed material on the package, in an alternating fashion under the plan submitted under subsection (c).

\*     \*     \*

(b) Advertising requirements

(1) In general

It shall be unlawful for any tobacco product manufacturer, importer, distributor, or retailer of cigarettes to advertise or cause to be advertised within the United States any cigarette unless its advertising bears, in accordance with the requirements of this section, one of the labels specified in subsection (a).

(2) Typography, etc.

Each label statement required by subsection (a) in cigarette advertising shall comply with the standards set forth in this paragraph. For press and poster advertisements, each such statement and (where applicable) any required statement relating to tar, nicotine, or other constituent (including a smoke constituent) yield shall comprise at least 20 percent of the area of the advertisement and shall appear in a conspicuous and prominent format and location at the top of each advertisement within the trim area. The Secretary may revise the required type sizes in such area in such manner as the Secretary determines appropriate. The word "WARNING" shall appear in capital letters, and each label statement shall appear in conspicuous and legible type. The text of the label statement shall be black if the background is white and white if the background is black, under the plan submitted under subsection (c). The label statements shall be enclosed by a rectangular border that is the same color as the letters of the statements and that is the width of the first downstroke of the capital "W" of the word "WARNING" in the label statements. The text of such label statements shall be in a typeface pro rata to the following requirements: 45-point type for a whole-page broadsheet newspaper advertisement; 39-point type for a half-page broadsheet newspaper advertisement; 39-point type for a whole-page tabloid newspaper advertisement; 27-point type for a half-page tabloid newspaper advertisement; 31.5-point type for a double page spread magazine or whole-page magazine advertisement; 22.5-point type for a 28 centimeter by 3 column advertisement; and 15-point type for a 20 centimeter by 2 column advertisement. The label statements shall be in English, except that—

(A) in the case of an advertisement that appears in a newspaper, magazine, periodical, or other publication that is not in English, the statements shall appear in the predominant language of the publication; and

(B) in the case of any other advertisement that is not in English, the statements shall appear in the same language as that principally used in the advertisement.

(3) Matchbooks

Notwithstanding paragraph (2), for matchbooks (defined as containing not more than 20 matches) customarily given away with the purchase of tobacco products, each label statement required by subsection (a) may be printed on the inside cover of the matchbook.

(4) Adjustment by Secretary

The Secretary may, through a rulemaking under section 553 of title 5, adjust the format and type sizes for the label statements required by this section; the text, format, and type sizes of any required tar, nicotine yield, or other constituent (including smoke constituent) disclosures; or the text, format, and type sizes for any other disclosures required under the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 301 et seq.]. The text of any such label statements or disclosures shall be required to appear only within the 20 percent area of cigarette advertisements provided by paragraph (2). The Secretary shall promulgate regulations which provide for adjustments in the format and type sizes of any text required to appear in such area to ensure that the total text required to appear by law will fit within such area.

(c) Marketing requirements

(1) Random display

The label statements specified in subsection (a)(1) shall be randomly displayed in each 12-month period, in as equal a number of times as is possible on each brand of the product and be randomly distributed in all areas of the United States in which the product is marketed in accordance with a plan submitted by the tobacco product manufacturer, importer, distributor, or retailer and approved by the Secretary.

(2) Rotation

The label statements specified in subsection (a)(1) shall be rotated quarterly in alternating sequence in advertisements for each brand of cigarettes in accordance with a plan submitted by the tobacco product manufacturer, importer, distributor, or retailer to, and approved by, the Secretary.

(3) Review

The Secretary shall review each plan submitted under paragraph (2) and approve it if the plan—

(A) will provide for the equal distribution and display on packaging and the rotation required in advertising under this subsection; and

(B) assures that all of the labels required under this section will be displayed by the tobacco product manufacturer, importer, distributor, or retailer at the same time.

(4) Applicability to retailers

This subsection and subsection (b) apply to a retailer only if that retailer is responsible for or directs the label statements required under this section except that this paragraph shall not relieve a retailer of liability if the retailer displays, in a location open to the public, an advertisement that does not contain a warning label or has been altered by the retailer in a way that is material to the requirements of this subsection and subsection (b).

(d)[1] Graphic label statements

Not later than 24 months after June 22, 2009, the Secretary shall issue regulations that require color graphics depicting the negative health consequences of smoking to accompany the label statements specified in subsection (a)(1). The Secretary may adjust the type size, text and format of the label statements specified in subsections (a)(2) and (b)(2) as the Secretary determines appropriate so that both the graphics and the accompanying label statements are clear, conspicuous, legible and appear within the specified area.

(d)[2] Change in required statements

The Secretary through a rulemaking conducted under section 553 of title 5 may adjust the format, type size, color graphics, and text of any of

the label requirements, or establish the format, type size, and text of any other disclosures required under the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 301 et seq.], if the Secretary finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products.

\*    \*    \*

15 U.S.C. § 1334 – Preemption

(a) Additional statements

Except to the extent the Secretary requires additional or different statements on any cigarette package by a regulation, by an order, by a standard, by an authorization to market a product, or by a condition of marketing a product, pursuant to the Family Smoking Prevention and Tobacco Control Act (and the amendments made by that Act), or as required under section 387c(a)(2) of title 21 or section 387t(a) of title 21, no statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

(b) State regulations

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

(c) Exception

Notwithstanding subsection (b), a State or locality may enact statutes and promulgate regulations, based on smoking and health, that take effect after the effective date of the Family Smoking Prevention and Tobacco Control Act, imposing specific bans or restrictions on the time, place, and manner, but not content, of the advertising or promotion of any cigarettes.

21 U.S.C. § 387 note (excerpt) – Severability

If any provision of this division, of the amendments made by this division, or of the regulations promulgated under this division (or under such amendments), or the application of any such provision to any person or circumstance is held to be invalid, the remainder of this division, such amendments and such regulations, and the application of such provisions to any other person or circumstance shall not be affected and shall continue to be enforced to the fullest extent possible.